UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------X

GIOVANNA GONZALEZ,

               Plaintiff,            **MEMORANDUM & ORDER**

  - against -             No. 22-cv-3577(KAM)(RML)

THE CITY OF NEW YORK,

               Defendant.

----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

     Pro Se Plaintiff Giovanna Gonzalez ("Gonzalez" or
"Plaintiff"), an Emergency Medical Technician ("EMT") formerly
employed by the New York City Fire Department ("FDNY") commenced
the instant action on June 17, 2022 against the City of New York
(the "City" or "Defendant") alleging violations of the Americans
with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. (ECF
No. 1, Complaint, "Compl.")[1]

     According to the operative Second Amended Complaint (ECF
No. 9, Second Amended Complaint, "SAC"), throughout 2021, FDNY,

---

[1] Although Plaintiff alleges several bases for discrimination in the Second
Amended Complaint and attached exhibits, including discrimination on the
basis of religion, in her December 9, 2022 response to Defendant's Motion for
a Pre-Motion Conference, Plaintiff confirms that "[h]er Complaint is only for
two counts of ADA violations." (ECF No. 11 at 7.) Plaintiff clarifies that
her pleading does not state "a due process claim under the [Fourteenth]
Amendment" of the United States Constitution and also that "[a]ny collective
bargaining reference is not relevant[.]" (*Id.*) The Court takes notice of
Plaintiff's clarification and construes the Second Amended Complaint as
alleging two claims under the ADA for purposes of resolving Defendant's
motion to dismiss.

the New York City Health + Hospitals Corporation ("H+H"), and the City implemented policies to curtail the spread of COVID-19, including masking requirements, weekly COVID-19 testing, and eventually, a vaccine mandate requiring all City employees to show proof of at least one dose of a qualifying COVID-19 vaccine, or to secure an approved exemption through the City's reasonable accommodation request process.  (SAC ¶¶ 1, 6.) Plaintiff failed to comply with the vaccine mandate and, after both her September 16, 2021 and October 27, 2021 exemption requests were denied, as well as her appeals to the City, Plaintiff was placed on leave without pay ("LWOP") status on April 26, 2022.  (SAC ¶ 56.)  Plaintiff was ultimately terminated on or about June 10, 2022.  (SAC ¶ 58.)

Plaintiff contends that Defendant's COVID-19 precautions contravened "established rights that form the bedrock of modern society" and that Plaintiff had a "right to refuse the defendant's [COVID-19] Policy measures," including because Plaintiff believed Defendant's policies failed to "comply with the ADA."  (SAC ¶¶ 67, 149.)  Specifically, Plaintiff first alleges that Defendant discriminated against her, in violation of the ADA, by "regarding her as disabled with a contagious disease and misclassifying her as having an impaired immune system," thereby subjecting her to "non-job-related treatments," such as mask-wearing, COVID-19 testing, and the "experimental"

2

COVID-19 vaccine.  (SAC ¶ 47.)  Second, Plaintiff alleges that Defendant retaliated against her in violation of the ADA by "imposing punitive measures and adverse employment actions," including by preventing her from participating in an H+H training program as well as other career advancement opportunities, placing her on LWOP status, and ultimately terminating her role as an FDNY EMT.  (SAC ¶ 148.)  Plaintiff seeks injunctive as well as declaratory relief.  (SAC at 1.) Plaintiff also seeks damages in the form of back pay, front pay or reinstatement of her prior position, compensatory damages, liquidated damages, other monetary damages, punitive damages, pre-judgment and post-judgment interest, and an award of costs and "reasonable court fees."  (SAC ¶ 137.)

Presently before the Court is Defendant's motion to dismiss the Second Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  (ECF Nos. 20, "Def. Mot."; 24, "Def. Reply".)  Plaintiff opposes Defendant's motion to dismiss the Second Amended Complaint.  (ECF No. 23, "Ptf. Opp.")  For the reasons set forth below, Defendant's motion to dismiss the Second Amended Complaint with prejudice is **GRANTED** and Plaintiff's Second Amended Complaint is **DISMISSED** in its entirety with prejudice.

## BACKGROUND

I.  **Factual Background**

## A. The H+H Paramedic Training Program

Plaintiff first became employed as an EMT for the FDNY on approximately October 31, 2016.  (SAC ¶ 21.)  In August 2021, Plaintiff was offered the opportunity to participate in a paramedic basic training class that was administered by H+H (the "H+H Paramedic Training Program").  (SAC ¶ 22.)  According to the Second Amended Complaint, successful completion of the H+H Paramedic Training Program would have resulted in Plaintiff's promotion to a paramedic role.  (SAC ¶ 22.)  However, the H+H Paramedic Training Program required participants to work in public hospitals throughout New York City, some of which required proof of vaccination against COVID-19 for all employees.  (*Id*.)  In light of the COVID-19 vaccination requirement and Plaintiff's unvaccinated status, Plaintiff informed an FDNY Chief, Chief Darnowski, that she was unvaccinated, but that she nevertheless wished to participate in the training program.  (SAC ¶ 23.)  Chief Darnowski purportedly reassured Plaintiff that her unvaccinated status would not be prohibitive because she would be assigned to work in hospitals that did not require a COVID-19 vaccination.  (SAC ¶ 23.)

Plaintiff was subsequently informed that vaccination against COVID-19 was in fact a requirement for participation in the H+H Paramedic Training Program in accordance with an August 16, 2021 pronouncement by the Governor of the State of New York

4

of a vaccine mandate for "all healthcare workers in New York
State." (ECF No. 9 at 53.) On September 9, 2021, Plaintiff was
again informed that "she would lose her seat in the [H+H
Paramedic Training Program] if she did not" show proof of
vaccination against COVID-19. (SAC ¶ 26.) During this
discussion, Plaintiff allegedly informed Chief Braun that her
opposition to the COVID-19 vaccine was "both religious in nature
and that no studies had been conducted to study the impact of
the vaccines on fertility." (SAC ¶ 27.) Plaintiff alleges that
FDNY Chief Braun "ignored" her stated concerns "and told her she
could either take the vaccine and get paramedic training or go
back to recruitment to find a new job or leave [the FDNY]."
(SAC ¶ 28.) Plaintiff further alleges that Chief Braun
"threatened" to assign Plaintiff to "a previous assignment" or
to a "field position." (*Id.*)

After Plaintiff complained to another FDNY Chief, Chief
Pistilli, that she "felt very uncomfortable" with her September
9, 2021 interaction with Chief Braun, Plaintiff was informed
again by Chief Pistilli on September 10, 2021 that she would not
be able to participate in the H+H Paramedic Training Program if
she did not show proof of vaccination against COVID-19 pursuant
to H+H's COVID-19 policy. (SAC ¶¶ 30-31.) Chief Pistilli
purportedly reassured Plaintiff that the FDNY would endeavor to
find or create a different role for her if she did not complete

5

the required training to become a paramedic.  (*Id.*)

### B. Plaintiff's September 16, 2021 Exemption Request

On September 16, 2021, Plaintiff submitted a "Legal Notice of Vaccination Exemption" to the Equal Employment Opportunity office of the FDNY (the "FDNY EEO") detailing her belief that "she was being denied a civil service title based on a policy from another agency," H+H (the "September 16, 2021 Exemption Request").  (SAC ¶ 32.)  In the September 16, 2021 Exemption Request, Plaintiff stated that she did "not authorize any person, government, institution, organization, [or] business to force PCR/COVID19 Testing" and that Plaintiff "decline[d] all vaccinations or COVID 19 related testing . . . due to religious reasons."  (ECF No. 9 at 58) (cleaned up).  Plaintiff also cited several legal authorities as the basis for the September 16, 2021 Exemption Request, including Title VII of the Civil Rights Act, the Nuremberg Code, the Universal Declaration on Bioethics and Human Rights, Article 7 of the Rome Statute of the International Criminal Court, and a lawsuit before the United States District Court for the Northern District of Alabama, *America's Frontline Doctors, etc. et al v. Becerra, et al.*, 20-cv-702(CLM), as well as several non-legal sources.  (ECF No. 9 at 58-82.)  In her September 16, 2021 Exemption Request, Plaintiff did not mention an actual or perceived disability or any other basis for objection that in any way relates to the

6

ADA.

On September 23, 2021 and in response to Plaintiff's
September 16, 2021 Exemption Request, Plaintiff received a
letter from the FDNY EEO informing her that the FDNY was not
empowered to grant an exception to a vaccine mandate implemented
by another agency, H+H, as it relates to the H+H Paramedic
Training Program.  (SAC ¶ 33); (ECF No. 9 at 84) ("the FDNY does
not grant exemptions from vaccine mandates of other entities,
including the NYC Health + Hospitals Corporation.")  The notice
further stated that to the extent Plaintiff's September 16, 2021
affidavit sought exemption from any COVID-19-related policy of
the FDNY, "Plaintiff [was] not required to be vaccinated as a
condition of employment with the FDNY."  (ECF No. 9 at 84.)
Nevertheless, the notice reiterated that pursuant to the FDNY's
COVID-19 policy, Plaintiff was required to show proof of a
negative COVID-19 test on a weekly basis if she chose to remain
unvaccinated.  (*Id.*)  To the extent Plaintiff sought exemption
from weekly testing in lieu of vaccination, the letter informed
Plaintiff that the requested exemption from both the FDNY's
weekly testing requirement and the alternative option to show
proof of vaccination would pose an undue hardship on the FDNY.
(*Id.*)  The FDNY denied Plaintiff's September 16, 2021 Exemption
Request on that basis.  (*Id.*)

### C. Weekly Testing

7

Plaintiff alleges that around the same time she received notice from the FDNY that her September 16, 2021 Exemption Request had been denied, Plaintiff received an email from the FDNY stating that she would be required to provide information about her vaccination status by the week of September 20, 2021.[2] (SAC ¶ 34.)  The FDNY notice seeking information about FDNY employees' vaccination status was sent to all FDNY employees in advance of the FDNY's return to office starting on September 27, 2021.  (ECF No. 9 at 89.)  The online program through which all FDNY employees were required to answer questions about their vaccination status provided three options for FDNY employees to self-identify as: (1) "vaccinated," (2) "unvaccinated," or (3) "do not wish to disclose."  (ECF No. 9 at 89.)  The policy further noted that for the purpose of coordinating mandatory weekly testing upon the FDNY's "Return[] to full-time" work in office "at all locations [on] Monday, September 27, 2021," employees who were either unvaccinated or did not wish to disclose their vaccination status "[would] be considered unvaccinated" and would be required to submit to weekly testing. (ECF No. 9 at 89, 91.)

Plaintiff states that "at [this] moment she understood that

---

[2] The Second Amended Complaint states September 30, 2021 as the date by which FDNY employees would be required to provide information about their vaccination status, but the informational email regarding the FDNY COVID-19 policy is dated September 19, 2021 and identifies the week of September 20, 2021 as the effective date.  (ECF No. 9 at 89.)

her employer's vaccination policy regarded her as an infection threat and . . . [as] so impaired that she needed experimental medical treatments to be allowed to work."  (SAC ¶ 34.) Plaintiff alleges that, in accordance with the policy requiring identification of each employee's vaccination status and weekly testing for unvaccinated employees and employees with undisclosed vaccination statuses, she was "coerced" into disclosing her status by the return-to-office deadline of September 27, 2021 and "coerced" into beginning weekly testing thereafter. (SAC ¶ 35.)  Plaintiff alleges that she was "threatened . . . with termination" if she did not submit to weekly testing, in accordance with the FDNY's return-to-office policy and that, starting on October 1, 2021, she began to submit to weekly testing "under duress."  (SAC ¶¶ 36-37.)

Plaintiff alleges that during this time period, she "was excluded from her unit and from work-related events." (SAC ¶ 40.)  Plaintiff also alleged that she was harassed and cited comments from her supervisors explaining that they were "running [] a tab" of employees that required weekly testing and "jokes" from certain colleagues revealing their belief that unvaccinated individuals were more susceptible to contracting and spreading COVID-19 as evidence of harassment.  (SAC ¶ 41.)

### D. Plaintiff's October 27, 2021 Exemption Request

On October 20, 2021, pursuant to an executive order from the

Mayor of the City of New York requiring a "COVID-19 vaccination
. . . for all City workers," the FDNY sent notice to all its
employees, including Plaintiff, that "all members of the FDNY
[would] be required to provide proof of at least one dose of
COVID-19 vaccin[ation] by November 1, 2021."  (ECF No. 9 at
120.)

The next week, on October 27, 2021, Plaintiff submitted
another "Legal Notice of Vaccination Exemption" (the "October
27, 2021 Exemption Request").  (SAC ¶ 44.)  In her affidavit,
Plaintiff explained that "the vaccination POLICY force[d] [her]
to choose between [] continued employment [] and [] moral
convictions . . . [and] beliefs" as a member of "a community
church of like-minded men and woman standing collectively and
peaceably to preserve the natural and unalienable rights and
freedoms afforded . . . by Nature's God."  (ECF No. 9 at 122-
23.)  As in her first Exemption Request, dated September 16,
2021, Plaintiff cited several legal authorities as the bases for
her exemption request, including the Federal Food, Drug, and
Cosmetic Act, the Fifth and Fourteenth Amendments to the United
States Constitution, the Civil Rights Act of 1964, the Health
Insurance Portability and Accountability Act of 1996 ("HIPAA"),
and the Nuremburg Code.  (ECF No. 9 at 123-26.)  Plaintiff
stated clearly and consistently that she "[did] not consent to
forced vaccination for religious reasons, among other[]" reasons

(ECF No. 9 at 126), and elaborated that "[i]t is against [her] faith and [] principled religious beliefs to accept compulsory, forced, mandated, or other coerced health measures of any kind." (ECF No. 9 at 131.)

Plaintiff also informed "several supervisors" that she wanted to transfer to another unit because she felt "uncomfortable working with Chief Braun," because she felt "left out of her unit," and because she was concerned that she was being "pushed out" of her position.  (SAC ¶ 45.)  Plaintiff received a letter from the FDNY EEO on December 14, 2021 informing her that her October 27, 2021 Exemption Request had been denied.  (SAC ¶ 46) (ECF No. 9 at 135.)  Plaintiff also received supplemental notice from the City, dated January 5, 2022, that specifically addressed Plaintiff's request for an exemption on the basis of her religious and moral opposition to COVID-19 precautions.  *See* (ECF No. 9 at 144) (Plaintiff's "request for a religious exemption from the vaccine mandate was denied because the asserted religious basis seeking the exemption was insufficient in light of the potential undue hardship to the [FDNY].")  Both the original notice denying Plaintiff's October 27, 2021 and the supplemental notice specifically addressing Plaintiff's religious and moral opposition outlined the procedure for appealing the City's decision.  (SAC ¶ 46.)

11

Plaintiff acknowledges that the appeal process with respect to her exemption request did not claim that cognizable rights under the ADA were at issue.  (SAC ¶ 48.)  Instead, Plaintiff understood that the exemption request pertained only to religious or medical exemptions.  (*Id.*)  Plaintiff appealed the denial and was later informed that the "New York City Appeals Panel" had denied her appeal in a letter dated April 6, 2022. (ECF No. 9 at 186.)

### E. Plaintiff' December 20, 2021 ADA Notice

Following the original notice on December 14, 2021 denying Plaintiff's October 27, 2021 Exemption Request, Plaintiff submitted a "Notice of discrimination and harassment based upon disability" on December 20, 2021 (the "December 20, 2021 ADA Notice") wherein she outlined her belief that she had been improperly "regarded as" disabled by the FDNY based on her unvaccinated status as well as the perception that she had "an impaired immune system and impaired respiratory system."  (SAC ¶ 47.)  In her December 20, 2021 ADA Notice, Plaintiff explicitly notes that she was no longer "fil[ing] a 'medical' or 'religious' exemption" request because she believed herself to be "'exempt' from the new policy."  (ECF No. 9 at 140.)  Indeed, Plaintiff confirms in a later "charge of discrimination" describing the December 20, 2021 ADA Notice that she "[had] not [ever] requested reasonable modifications" with respect to her

December 20, 2021 ADA Notice.  (ECF No. 9 at 162.)

### F. Plaintiff's Continued Failure to Comply with the City's COVID-19 Policy

Based on Plaintiff's failure to comply with the H+H vaccine mandate, Plaintiff was denied another opportunity to participate in the H+H Paramedic Training Program in February 2022.  (SAC ¶ 49.)  Plaintiff alleges that she was also "excluded from activities and . . . events," "given less work, and excluded from conversations."  (SAC ¶ 50.)  Plaintiff also alleges that she was "continuously harassed . . . to take weekly PCR tests under the threat of being terminated," in accordance with the FDNY's weekly testing requirement for unvaccinated employees.  (SAC ¶¶ 51-52.)

Following the April 7, 2022 denial of Plaintiff's appeal, Plaintiff alleges that, on April 26, 2022, she was informed she had been placed on LWOP status due to her failure to comply with the City's COVID-19 vaccine mandate, which was announced on October 20, 2021 and went into effect on November 1, 2021. Finally, in June 2022, Plaintiff received a letter dated June 9, 2022 informing her that because of Plaintiff's "failure to comply with the New York City Health Commissioner's Order requiring vaccination of all City of New York employees," Plaintiff was terminated as of June 10, 2022.  (SAC ¶ 58) (ECF No. 9 at 200.)

## II.   Procedural Background

On June 17, 2022, Plaintiff filed her original Complaint, which named Plaintiff's former employer, the FDNY as the sole Defendant.  On October 12, 2022, Plaintiff filed an Amended Complaint, which also named the FDNY as the sole Defendant. After a January 17, 2023 Pre-Motion Conference wherein the FDNY's counsel was instructed to identify the proper defendant and inform the Court, the Court granted leave for Plaintiff to file a Second Amended Complaint to name the City as the sole Defendant.  (Jan. 23, 2023 Order.)  Accordingly, on January 23, 2023, the Second Amended Complaint became the operative pleading.

## LEGAL STANDARD

## I.   Motion to Dismiss

To survive a motion to dismiss pursuant to Rule 12(b)(6), the Second Amended Complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Id.*

When considering a motion to dismiss under Rule 12(b)(6), a district court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party. *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021). Pleadings "filed by *pro se* litigants," require the Court to construe the pleadings "liberally and interpret them to raise the strongest arguments that they suggest." *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023) (internal quotation marks and citation omitted). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Drimal v. Tai*, 786 F.3d 219, 223 (2d. Cir. 2015). Moreover, the Court "cannot invent factual allegations that [the plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

The Court may refer to "documents attached to [the complaint] or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken." *Grant v. County of Erie*, 542 F. App'x 21, 23 (2d Cir. 2013) (summary order); *see also Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002) (clarifying that "*reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice of possession is not enough." (emphasis in

15

original)).  "[A] district court may [also] rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).  Finally, the Court will not accept factual allegations that are "contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint."  *Tsinberg v. City of New York*, No. 20-cv-749 (PAE), 2021 WL 1146942, at *4 (S.D.N.Y. Mar. 25, 2021) (quoting *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005)).

## II.  ADA

### A. Discrimination

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability" in hiring, compensating, training, advancing, or discharging, or in any "other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  At the motion to dismiss stage, Plaintiff may establish a prima facie case of disability discrimination under the ADA by showing that:

> (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) [the plaintiff] was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) [the plaintiff] suffered an adverse employment action; and (5) the adverse action was imposed because of [the plaintiff's] disability.

*Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015).  ADA discrimination claims are subject to the burden-shifting analysis established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under that framework, Plaintiff must first "establish a prima facie case" of discrimination.  *Cortes v. MTA N.Y.C. Transit*, 802 F.4d 226, 231 (2d Cir. 2015).  If she does so, Plaintiff's employer must then offer evidence of "a legitimate non-discriminatory reason" for the allegedly adverse employment action, at which point the "burden of persuasion" shifts back to Plaintiff to produce evidence demonstrating "that the proffered reason is [] pretext[ual]."  *Id.* (internal quotation marks and citation omitted).

### B. Retaliation

The ADA makes it unlawful to retaliate "against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" pursuant to the ADA.  42 U.S.C. § 12203(a); s*ee also Sarno v. Douglas Elliman-Gibbons & Inves., Inc.* 183 F.3d 155, 159 (2d Cir. 1999) ("The ADA prohibits, *inter alia*, retaliation against any individual who has asserted rights under the ADA.").  In order to make out a prima facie case of retaliation under the ADA,

17

Plaintiff must allege that "(1) she engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manilus*, 313 F.3d 713, 719 (2d Cir. 2002) (noting that "[c]laims for retaliation under the ADA are analyzed under the same burden-shifting framework established for Title VII cases.") (internal quotation marks and citations omitted).

## DISCUSSION

As an initial matter, federal courts throughout the Second Circuit have approved vaccine mandates as a lawful condition of employment, and this Court and the Second Circuit have approved the particular vaccine mandate at issue in this case, which is the same vaccine mandate at issue in the case of *Garland v. New York City Fire Dep't*, 574 F. Supp. 3d 127 (E.D.N.Y. 2021), *aff'd*, No. 23-662-CV, 2024 WL 445001 (2d Cir. Feb. 6, 2024). "Both [the Second Circuit] and New York state courts have held that vaccination is a 'condition of employment'" *Garland*, 2024 WL 445001, at *3 (internal citation omitted), and that the City's COVID-19 vaccination requirement, which was implemented by the FDNY starting on November 1, 2021, "satisfied the minimum standards set by the federal constitution." *Id*. at *5. Although *Garland* examined the City's vaccine mandate in the

context of a due process claim, several courts throughout this Circuit have rejected claims that employers' COVID-19 vaccine mandates violated the ADA as well. *See Mone v. New York State Unified Court System*, No. 21-cv-9614 (DG)(LB), 2023 WL 4424093 (E.D.N.Y. Mar. 22, 2023), *report and recommendation adopted*, No. 21-cv-6914 (DG), 2023 WL 4073770 (E.D.N.Y. June 20, 2023), *aff'd*, No. 23-964-CV, 2024 WL 1109258 (2d Cir. Mar. 14, 2024); *Apuzza v. NYU Langone Long Island*, No. 22-cv-7519 (NJC), 2023 WL 90227910 (E.D.N.Y. Dec. 29, 2023); *Newell v. State Univ. of New York Westchester Cmty. Coll.*, No. 22-cv-8524 (PMH), 2023 WL 4082030 (S.D.N.Y. June 20, 2023). Plaintiff's repeated contention in her Second Amended Complaint and in her opposition brief that the COVID-19 precautions implemented by Defendant in response to the COVID-19 pandemic were generally "illegal" are without merit. Nevertheless, the Court examines Plaintiff's factual allegations regarding disability discrimination and retaliation as set forth below.

## I. Discrimination

Plaintiff carries the initial burden of making out a prima facie case of discrimination under the ADA, which requires a showing that (1) "[Plaintiff's] employer is subject to the ADA;" (2) "[Plaintiff] is disabled within the meaning of the ADA or perceived to be so by [her] employer;" (3) "[Plaintiff] was otherwise qualified to perform the essential functions of the

19

job with or without reasonable accommodation;" and (4)
"[Plaintiff] suffered an adverse employment action because of
[her] disability." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d
127, 134 (2d Cir. 2008).

With respect to the second prong, Plaintiff may establish a
qualifying disability by alleging that she was "regarded as
having [] an impairment" by her employer pursuant to 42 U.S.C. §
12102(1)(C).[3]  An individual is "regarded as having [] an
impairment" if she has "been subjected to [a prohibited action]
because of an actual or perceived physical or mental impairment"
except for any "transitory impairment[.]"  42 U.S.C. §§
12102(3)(A)-(B).  A "transitory impairment" is one "with an
actual or expected duration of 6 months."  42 U.S.C. §
12102(3)(B).  Where, as here, "plaintiff brings a claim on the
basis that [her] employer regarded [her] as disabled, the
decisive issue is the employer's perception of [Plaintiff's]
alleged impairment." *Devany v. United Parcel Service, Inc.*, No.

---

[3] It is axiomatic that Plaintiff carries the initial burden of proof to
establish a prima facie case of discrimination, including to establish that
she was "regarded as" disabled pursuant to 42 U.S.C. § 12102(1)(C).
Plaintiff appears to misunderstand the governing standard, as reflected in
the Second Amended Complaint. *See* (SAC ¶ 61) ("where[] the plaintiff is
proceeding under both the 'regarded as' and the 'record of' prongs of the ADA
. . . the burden of proof is upon the defendant to prove that it qualified
for an exemption or exception to their legal duties to comply with the ADA.")
Plaintiff asserts an incorrect statement of law.  Plaintiff must allege
sufficient facts to establish that Defendant "regarded" Plaintiff as
disabled, in addition to each of the other elements of the five-factor test
for discrimination under the ADA. *See Apuzza v. NYU Langone Long Island*, No.
22-cv-7519 (NJC), 2023 WL 9022790, at *3 (E.D.N.Y. Dec. 29, 2023) (noting
that the plaintiff's nearly identical misstatement of law regarding "which
party bears the initial burden" of proof "is incorrect.")

18-cv-6684 (PGG), 2021 WL 4481911, at *12 (S.D.N.Y. Sep. 30, 2021) (citing *Sacks v. Gandhi Eng'g Inc.*, 999 F. Supp. 2d 629, 633 (S.D.N.Y. 2014)).

As an initial matter, Plaintiff argues that the question of whether Plaintiff has adequately alleged a qualifying disability should not be so decisive in the instant case. Instead, Plaintiff argues the Court should focus on "the merits of [her] discrimination claim" as opposed to "the question of whether the plaintiff is an individual with a disability" or is an individual that is regarded as having a disability. (Ptf. Opp. at 29.) However, the interpretive guidance that Plaintiff cites encourages courts to construe "[t]he definition [of disability] . . . broadly in favor of expansive coverage," not to dispense all together with the inquiry of whether a qualifying disability exists. In the instant case, Plaintiff's allegation of discrimination on the basis of an alleged disability hinges on whether she has pleaded sufficient facts to establish that she has been regarded as disabled by Defendant. Without a qualifying disability, the Court has no lens through which to examine Plaintiff's allegations of discrimination. Accordingly, in light of Plaintiff's own factual assertion that she was regarded as disabled by Defendant and that she was discriminated against on the basis of that alleged perceived disability, the question of whether Plaintiff alleged sufficient facts that she

21

was in fact regarded as disabled by Defendant is dispositive.

In the Second Amended Complaint, Plaintiff generally alleges that Defendant's COVID-19 "policy regarded [her] as disabled because of [her] unvaccinated status." (SAC ¶ 7.) Plaintiff explains that she was regarded "as disabled with a communicable disease and significantly impaired . . . immune and respiratory systems" by virtue of her unvaccinated status. (SAC ¶ 2.) Plaintiff's theory of disability has been raised and rejected numerous times in courts throughout the Second Circuit and beyond. *See Apuzza*, 2023 WL 9022790, at *4 (rejecting Plaintiff's assertion that her employer's COVID-19 "policy regards all untreated employees as disabled with a deadly contagious disease without relying upon any individualized assessment . . . because it is illogical that an employer would regard *all* of their employees as disabled.") (internal quotation marks omitted); *Mone*, 2023 WL 4424093, at *9 ("That an employer requires an employee to follow generally applicable COVID-19 safety rules and enforces those policies when an employee fails to comply does not, without more, support the inference that the employer regards the employee as disabled."); *Johnson v. Mount Sinai Hospital Group, Inc.*, No. 22-cv-2936 (AMD), 2023 WL 2163774, at *5 (E.D.N.Y. Feb. 22, 2023) (rejecting plaintiff's assertion that she was regarded as having "an impaired immune system and an impaired respiratory system[]" as "unreasonable"

22

in light of the fact that "defendant's COVID-19 policies were applicable to all of its employees, except those with legitimate exemption, as required by law.")

As set forth in each of these decisions, Plaintiff's allegation that she was subject to the same COVID-19 precautions to which all City employees were subject is irreconcilable with the contention that Plaintiff was regarded as disabled by Defendant by virtue of her noncompliance with respect to those universally applied COVID-19 precautions.  First, Plaintiff's assertion that the policy regarded her as disabled because of her "impaired or suppressed immune system that made [her] prone to contracting COVID-19" does not constitute "an actual or perceived physical or mental impairment" under the ADA.  42 U.S.C. § 12102(3)(A).  *See D'Cunha v. Northwell Health Sys.*, No. 22-cv-988 (MKV), 2023 WL 2266520, at *5 (S.D.N.Y. Feb. 28, 2023) (noting that Plaintiff's "assertion[] that she was perceived as being 'impaired in her immunity'" relates to a future risk, but does not constitute an allegation "that she was regarded as *presently* having a disability.") (emphasis in original).  Even to the extent Plaintiff seeks to define the alleged disability as relating to a present impairment rather than a risk of future impairment, neither contracting COVID-19 nor being unvaccinated are considered disabilities under 42 U.S.C. § 12102(3)(A).  *See Apuzza*, 2023 WL 9022790, at *4 ("Federal courts generally agree

23

that a COVID-19 infection is not a disability.  Nor is the plaintiff's vaccination status a disability.") (internal quotation marks and citations omitted).

Plaintiff argues that previous decisions regarding whether COVID-19 constitutes a disability under the ADA fail to take into account the reality that "long-COVID" is neither transitory nor minor for those who suffer from prolonged complications. (Pft. Opp. at 30.)  Though Plaintiff raises an interesting question for the consideration of future courts, this Court need not delve into the hypothetical question of how the ADA should treat long-Covid because Plaintiff has not alleged that she has ever suffered from long-COVID, or that she was either disabled by long-COVID or regarded as disabled by long-COVID.[4]

---

[4] Plaintiff argues that "defendant never performed an individualized assessment of the plaintiff so there is no basis to claim the defendant perceives plaintiff as having a mild case of COVID but not 'long-COVID'." (Ptf. Opp. at 30.)  Plaintiff alleges that any argument that an impairment is "transitory and minor" is "a defense for which the defendant bears the burden [of proof], rather than an element of the [plaintiff's] pleading requirement."  (Ptf. Opp. at 30.)  This statement again is based on a misunderstanding of the standard for a sufficient pleading of a prima facie discrimination claim under the ADA.  Even if Defendant bears the burden of raising any applicable defenses to the allegations in the Second Amended Complaint, including any argument regarding the transitory and minor nature of an alleged impairment, Plaintiff did not make any allegations relating to long-COVID in the Second Amended Complaint.  Neither did Plaintiff allege that she ever contracted COVID-19 or long-COVID.  Indeed, Plaintiff contends that "she never tested positive for COVID." (AC ¶ 52.)  Importantly, Plaintiff does not allege that a COVID-19 or long-COVID diagnosis was the basis for Defendant's allegedly regarding her as disabled.  Plaintiff only alleged that her unvaccinated status, her immune and respiratory systems, and the contagion threat she posed to others by virtue of her unvaccinated status were the bases for the alleged disability.  In any event, Defendant cannot assert a defense to a hypothetical allegation it was not made aware of until Plaintiff's opposition brief and the Court need not consider an allegation absent from "the [second] amended complaint . . . [] raised for the first time in opposition" to the motion to dismiss.  *Gonzalez v. Dist. Council 37,*

Because Plaintiff has failed to allege sufficient facts to establish that she was regarded as disabled by Defendant, Plaintiff fails to state a claim for discrimination under the ADA.  Consequently, Plaintiff's ADA discrimination claim is dismissed.

## II. Retaliation

As set forth previously, to state a claim for retaliation under the ADA, Plaintiff must plausibly allege that she (1) engaged in a protected activity that (2) Defendant was aware of, (3) she suffered an adverse employment action, which was taken by Defendant against her, and that (4) there is a causal connection between her participation in protected activity and the resulting adverse employment action.  *See Caskey v. County of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014).  The Second Circuit has repeatedly affirmed that courts may "analyze a retaliation claim under the ADA using the same framework employed in Title VII cases."  *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001).

At the outset, the nature of what protected activities Plaintiff alleges she engaged in and what adverse employment actions Plaintiff allegedly suffered bears clarification.  Based on the Court's liberal construction of the Second Amended

---

*AFSCME, AFL-CIO, SSEU Loc. 371*, 843 F. App'x 361, 363 (2d Cir. 2021).

Complaint, Plaintiff has failed to allege a causal connection between the alleged adverse employment actions and her engagement in protected activity.  To the contrary, Plaintiff alleges facts suggesting that any such inference of causality is impossible.

### A. Protected Activity

Protected activity is defined as an activity opposing an employment practice that is either unlawful under the ADA or that Plaintiff had a "good faith, reasonable belief" was unlawful under the ADA.  *Treglia*, 313 F.3d 713, 719 (2d Cir. 2002).

Plaintiff's December 20, 2021 ADA Notice clearly constitutes protected activity under the ADA insofar as Plaintiff provided notice to Defendant of alleged "discrimination and harassment based upon disability."  (SAC ¶ 45.)  Plaintiff argues in opposition to Defendant's motion to dismiss, that she engaged in protected activity prior to her December 20, 2021 ADA Notice, starting from August 2021.  (Ptf. Opp. at 35.)  Specifically, Plaintiff argues that she "objected consistently and continually, seeking assistance and redress . . . because [she] opposed the violation of her personal property rights . . . such as medical privacy, informed consent, right to a discrimination-free and retaliation-free workplace, right to refuse medical experiments and the right to refuse non-job

26

related medical treatments and inquiries." (Ptf. Opp. at 35.)
Plaintiff further notes that "[s]he had meetings with her
superiors, she expressed concern that she lost her previous
position because of a medical treatment that was not related to
her job . . . she expressed her concerns about the treatment's
effect on her ability to have children, she discussed that she
didn't want to be treated differently because of 'vaccine
status'" and she "asked for written proof of liability if she
took these treatments[.]" (*Id.*)

There is no mention in the Second Amended Complaint of
Plaintiff objecting to Defendant's COVID-19 precautions in
August 2021 informally or formally.  The first mention of an
informal objection to the COVID-19 precautions is on September
9, 2021 at which point Plaintiff alleges that she informed Chief
Braun of "her choice to remain unvaccinated" and that "her
hesitation was both religious in nature and [because] no studies
had been conducted to study the impact of the vaccines on
fertility." (SAC ¶ 27.)  Plaintiff clarified in her Pre-Motion
response that she was not alleging religious discrimination.
(ECF No. 11 at 7.)  Plaintiff's allegations that she generally
objected to the implementation of COVID-19 precautions in the
context of "uncomfortable" conversations with her supervisor
also does not amount to a reasonably held belief that those
COVID-19 precautions were discriminatory under the ADA.  (SAC ¶

27

20); *See Kelly v. Howard I. Shapiro & Associates Consulting Engineers P.C.*, 716 F.3d 10, 15 (2d Cir. 2013) ("A plaintiff's belief . . . is not reasonable because he or she complains of something that appears to be discrimination in some form" if Plaintiff's alleged "objections at the time neither point[] out discrimination against particular individuals nor discriminatory practices by" Defendant under the ADA); *Drumm v. Suny Geneseo College* , 486 F. App'x 912, 914 (2d Cir. 2012) (explaining that "allegations that [plaintiff's] supervisor 'berated' her and made other harsh comments . . . amount only to general allegations of mistreatment, and do not support an inference that plaintiff had a reasonable good faith belief that she was subject to [] discrimination."). Plaintiff's proffered explanation for her objections specifically related to religion – not disability, and she has abandoned her religion-based claims.

Plaintiff also refers to her September 16, 2021 Exemption Request and October 27, 2021 Exemption Request, both of which set forth several legal bases for her opposition to Defendant's COVID-19 precautions, including Title VII of the Civil Rights Act, the Nuremberg Code, the Universal Declaration on Bioethics and Human Rights, Article 7 of the Rome Statute of the International Criminal Court, the Federal Food, Drug and Cosmetic Act, the Fifth and Fourteenth Amendments to the United

28

States Constitution, HIPAA, and a lawsuit before the United
States District Court for the Northern District of Alabama,
*America's Frontline Doctors, etc. et al v. Becerra, et al.*, 20-
cv-702(CLM), as well as several non-legal sources.  (ECF No. 9
at 58-82, 123-26.)  Here too, Plaintiff points to objections
that reference Plaintiff's religious and moral beliefs as the
basis for her opposition to Defendant's COVID-19 precautions.
See (ECF No. 9 at 58) ( "I . . . do not authorize any person . .
. to force PCR/COVID 19 testing or inoculation upon my flesh . .
. due to religious reasons") (cleaned up); (ECF No. 9 at 122-23)
(Defendant's "vaccination policy forces me to choose between my
continued employment here and my moral convictions to decline
any term of employment that is inconsistent with my beliefs . .
. I have joined forces with a community church of like-minded
men and women . . . to preserve the natural and unalienable
rights and freedoms afforded to us by Nature's God.")
Plaintiff's complaints regarding Defendant's COVID-19
precautions were consistently moral in nature up until December
20, 2021 when Plaintiff notified the FDNY that she believed
Defendant's COVID-19 precautions constituted discrimination
under the ADA.

As previously noted, the Court construes pleadings filed by
*pro se* litigants "liberally and interpret them to raise the
strongest arguments that they suggest."  *Hunter v. McMahon*, 75

F.4th 62, 67 (2d Cir. 2023) (internal quotation marks and citation omitted).  Even construing Plaintiff's Second Amended Complaint liberally, however, until Plaintiff submitted the December 20, 2021 ADA Notice, there is nothing in the Second Amended Complaint to infer that Plaintiff's expression of opposition to Defendant's COVID-19 precautions or her efforts to seek exemption from the October 20, 2021 vaccine mandate were based on a good faith, reasonable belief that Defendant's COVID-19 precautions violated the ADA, as opposed to the dozen other laws cited by Plaintiff.  The factual assertions in the Second Amended Complaint and the exhibits to the Second Amended Complaint, which reflect Plaintiff's contemporaneous communications and complaints to the FDNY, all suggest that Plaintiff did not oppose Defendant's COVID-19 precautions on the basis of Defendant's regard for Plaintiff as disabled. Plaintiff provides no legal authority for the proposition that seeking exemption from COVID-19 precautions on the basis of her alleged moral or religious beliefs, or on the basis of any of the dozen other legal authorities cited in her September 16, 2021 and October 27, 2021 Exemption Requests, constitute protected activity under the ADA.  Nor does Plaintiff allege in the Second Amended Complaint that she reasonably believed her opposition to Defendant's COVID-19 precautions related to the ADA until the December 20, 2021 ADA Notice.  Indeed, any such an

assertion would be unreasonable in light of Plaintiff's specific citation to other laws.

Accordingly, based on the factual allegations in the Second Amended Complaint, which the Court construes liberally, Plaintiff's assertion that she "exercised her right to refuse the defendant's COVID-19 policy measures based upon a good faith belief that the policy . . . [violated] the ADA" (SAC ¶ 149), constitutes an assertion that plaintiff engaged in protected activity as of December 20, 2021.

### B. Adverse Employment Actions

An adverse employment action is defined as "a materially adverse change in the terms, privileges, duration and conditions of employment." *Treglia*, 313 F.3d at 720. Typically, "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand" have been found to constitute adverse employment actions in a case alleging retaliation under the ADA. *Preda v. Nissho Iwai Am. Corp.*, 128 F.3d 789, 791 (2d Cir. 1997).

Plaintiff alleges that she suffered from several adverse employment actions, including "loss or threatened loss of pay, isolation [and] segregation, diminished employment opportunities, interference with her rights and termination of her employment." (SAC ¶ 153.) Plaintiff elaborates in her opposition brief that she also suffered from the following

31

adverse employment actions: "conditions of her leave were changed," "opportunities for advancement were diminished," "conditions of access were changed," "new qualification standards were imposed based upon medical treatments," "medical privacy was diminished," "disparate treatment was imposed based upon 'treatment status,'" her "position was diminished," the "ability for meaningful redress was diminished," opportunities for "participation in work events" were diminished, "rights protected under the ADA" were interfered with, and finally, Plaintiff was terminated.  (Ptf. Opp. at 32.)

The Court construes Plaintiff's factual assertions regarding adverse employment actions to fall into three categories: (1) Defendant's imposition of certain restrictions and requirements pursuant to its COVID-19 precautions, including weekly testing and the requirement that Plaintiff reveal her COVID-19 vaccination status, (2) Plaintiff's allegedly diminished opportunities for training and advancement, particularly as it relates to the H+H Paramedic Training Program, and (3) Plaintiff's LWOP status and termination.

### 1. Defendant's COVID-19 Precautions

Plaintiff first alleges that Defendant's COVID-19 policy itself constitutes an adverse employment action because Defendant's COVID-19 precautions effectuated a "materially adverse change in the terms and conditions of [Plaintiff's]

employment." (SAC ¶ 156.) In describing Defendant's COVID-19 precautions, Plaintiff refers to the FDNY's masking requirement and weekly testing leading up to November 1, 2021 and eventually, the City's vaccine mandate starting in November 2021. The Court also understands Plaintiff's assertion regarding Defendant's COVID-19 policy to refer to the manner in which the policy was carried out, including Plaintiff's "isolation" and "segregation" from others as it relates to work events; repeated efforts to ensure Plaintiff's compliance with the FDNY's weekly testing requirement, which Plaintiff alleges was a form of harassment; jokes made by coworkers regarding their belief that the COVID-19 vaccine protects against contracting and spreading COVID-19; and Plaintiff's September 9, 2021 discussion with Chief Braun wherein he told Plaintiff that "she could either take the vaccine and get paramedic training or go back to recruitment to find a new job or leave [the FDNY]." (SAC ¶ 28.) With respect to Plaintiff's allegations of social isolation or "jokes" from co-workers regarding her unvaccinated status, "[i]t is unlikely that isolation and segregation constitute materially adverse changes to Plaintiff's employment" *Sharikov v. Philips Med. Sys. MR, Inc.*, 659 F. Supp. 3d 264, 281 (N.D.N.Y. 2023), or that "being given the proverbial cold shoulder by one's coworkers" or "being left out of meetings"

amounts to an adverse employment action. *McCullough v. Xerox Corp.*, 942 F. Supp. 2d 380, 387 (W.D.N.Y. 2013).

Nevertheless, even assuming, *arguendo*, that the overall changes in Plaintiff's employment experience constitute an "adverse employment action," it would be unreasonable to infer that the alleged changes were caused by Plaintiff's engagement in protected activity on December 20, 2021, as opposed to being caused by the COVID-19 pandemic and Defendant's attempt to respond to the COVID-19 pandemic by virtue of its COVID-19 precautions, all of which predated any protected activity. Indeed, Plaintiff does not allege in the Second Amended Complaint or otherwise that Defendant's COVID-19 precautions were caused by her December 20, 2021 Notice, or any of the other alleged protected activities, including either the September 16, 2021 or October 27, 2021 Exemption Requests.  To the extent Plaintiff alleges that Defendant's COVID-19 precautions, as applied to her, were caused by her failure to conform to those precautions, the COVID-19 precautions predate Plaintiff's failure to comply and she was put on notice of the consequences for her failure to comply at the time each successive precaution was announced and implemented. *See e.g.,* (SAC ¶ 24) (Plaintiff was informed, for the second time, on September 9, 2021, that "she would lose her seat in the [H+H Paramedic Training Program] if she did not" show proof of vaccination against COVID-19.);

34

(SAC ¶ 33, ECF No. 9 at 84) (Plaintiff was informed that, pursuant to the FDNY's policy, upon return to the office on September 27, 2021, Plaintiff would either have to show proof of a COVID-19 vaccination or submit to weekly COVID-19 testing); (SAC ¶ 34) (ECF No. 9 at 89) (Plaintiff received a letter dated September 19, 2021 explaining that "employees who are unvaccinated or do not wish to disclose their status will be" required to submit to weekly COVID-19 testing); (SAC ¶ 34) (ECF No. 9 at 120) (Plaintiff received a letter dated October 20, 2021 advising that pursuant to the "COVID-19 vaccin[e] mandate for all City workers" pronounced by the Mayor of the City of New York, "unvaccinated employees will be placed on unpaid leave until they provide proof of vaccination to the Department.")

Accordingly, Defendant's COVID-19 precautions cannot be causally linked to Plaintiff's December 20, 2021 ADA Notice.

### 2. H+H Paramedic Training

Second, Plaintiff alleges that her inability to participate in the H+H Paramedic Training Program on the basis of her unvaccinated status, of which she was informed for the second time on September 9, 2021 (SAC ¶ 24)[5], constitutes an adverse employment action.

As an initial matter, the vaccine mandate implemented by

---

[5] Plaintiff does not allege the date on which she was first informed that she would not be able to participate in the H+H Paramedic Training Program on the basis of her unvaccinated status.

H+H with respect to H+H training programs cannot be attributed
to the City because they are two separate governmental entities.
*See De'Bey v. City of New York*, No. 20-cv-1034 (PGG)(SLC), 2021
WL 8013765, at *19 (S.D.N.Y. Oct. 26, 2021), *report and
recommendation adopted*, No. 20-cv-1034 (PGG), 2022 WL 909790
(S.D.N.Y. Mar. 29, 2022) ("New York courts consistently have
held that the City is a separate legal entity from [H+H].")
(internal citation omitted).

In any event, Plaintiff's inability to participate in the
H+H Paramedic Training Program predates any alleged protected
activity by Plaintiff.  As previously noted, Plaintiff did not
engage in protected activity until the December 20, 2021 ADA
Notice.  Even Plaintiff's September 16, 2021 and October 27,
2021 Exemption Requests were submitted after the date on which
Plaintiff received notice that she would not be permitted to
participate in the H+H Paramedic Training Program if she
remained unvaccinated in violation of the H+H vaccine mandate,
which was implemented in August 16, 2021.  *See* (SAC ¶ 24)
(Plaintiff was informed that vaccination against COVID-19 was a
requirement for participation in the H+H Paramedic Training
Program in accordance with an August 16, 2021 pronouncement by
the Governor of the State of New York that "all healthcare
workers in New York State" must be vaccinated); (SAC ¶ 26) (On
September 9, 2021, Plaintiff was again informed that "she would

36

lose her seat in the [H+H Paramedic Training Program] if she did not" show proof of vaccination against COVID-19).

Accordingly, Plaintiff has not alleged a plausible causal connection between her December 20, 2021 ADA Notice and her inability to participate in the H+H Paramedic Training Program.

### 3. LWOP and Subsequent Termination

The last alleged adverse employment actions relate to Plaintiff's LWOP status on April 26, 2022 and subsequent Termination on approximately June 10, 2022. "There can be no dispute that Plaintiff's termination was a materially adverse change in the terms and conditions of [her] employment." *Davis*, 804 F.3d at 235.

Even so, Plaintiff again fails to allege a causal connection between her LWOP status and termination, on the one hand, and her December 20, 2021 protected activity, on the other hand. Plaintiff's failure to comply with Defendant's COVID-19 policy – not her December 20, 2021 ADA Notice – was clearly the cause of her LWOP and subsequent termination. Indeed, Plaintiff concedes that she was warned on several occasions that her continued failure to comply with Defendant's COVID-19 precautions, absent an approved exemption, would result in her termination.

Where, as here, the consequences for an individual's non-compliance with a lawful employment policy, such as Defendant's

COVID-19 precautions, were established before the alleged
protected activity occurred, courts routinely dismiss
retaliation claims for lack of causation. *See Johnson v. Mount
Sinai Hospital Group, Inc.*, No. 22-cv-2936 (AMD), 2023 WL
216963774, at *7 (E.D.N.Y. Feb. 22, 2023) ("While the
plaintiff's refusal to comply with the defendant's COVID-19
policies was clearly the basis for her termination, the
defendant adopted its policies before the plaintiff" engaged in
any protected activity); *Johnson v. Maximus Services LLC*, No.
22-cv-2935 (AMD), 2023 WL 5612826, at *4 (E.D.N.Y. Aug. 30,
2023) ("the defendant merely enforced its policy, which it
adopted before the plaintiff voiced any opposition to it");
*Apuzza*, 2023 WL 9022790, at *6 ("Even assuming that [plaintiff]
adequately alleges that she engaged in protected activity,
[plaintiff's] claim fails because she does not plead sufficient
facts to plausibly allege that the protected activity, rather
than [defendant's vaccine mandate], caused her termination.");
*Grimes v. New York and Presbyterian Hospital*, No. 23-cv-652
(MKV), 2024 WL 816208, at *10 (S.D.N.Y. Feb. 6, 2024) ("contrary
to [plaintiff's] claims that her termination . . . constituted
retaliation based on religious or disability animus, [plaintiff]
was expressly warned—along with all other [] employees—that
noncompliance with the DOH Mandate would result in [the] precise
consequences" that she suffered from).

Ultimately, Plaintiff's own allegations in the Second Amended Complaint establish that even if she had never filed the December 20, 2021 ADA Notice, Plaintiff's continued noncompliance would have resulted in exactly the consequences that she alleges as adverse employment actions.  Indeed, even if Plaintiff had not informally complained of Defendant's COVID-19 precautions in her discussions with her supervisors or submitted either the September 16, 2021 or October 27, 2021 Exemption requests, pursuant to the COVID-19 policies of the City, the FDNY, and H+H, Plaintiff would not have been permitted to participate in the H+H Paramedic Training Program, she would have been required to submit to weekly COVID-19 testing and, after the City enacted its vaccine mandate, she would have been placed on LWOP status and she would have been terminated because she failed to adhere to the applicable COVID-19 policies at the relevant times, all of which were mandated by the City.  *See Grimes*, 2024 WL 816208, at *9 ("Retaliation claims under . . . ADA require a plaintiff to plausibly allege that her protected activity was a 'but-for' cause of the alleged adverse action by the employer" and Plaintiff's claim fails because "she still would have been terminated based on her failure to get vaccinated.") (citing *Univ. of Tex. Sw. Med. Ctr. V. Nassar*, 570 U.S. 338 (2013)).

With respect to each of the three categories of adverse

employment actions, Plaintiff failed to allege a causal connection between her December 20, 2021 protected activity and the alleged adverse employment actions.  To the contrary, Plaintiff has alleged facts strongly suggesting that Plaintiff's experience being subjected to the applicable COVID-19 precautions, her inability to participate in the H+H Paramedic Training Program, and her LWOP status and subsequent termination were all caused by her choice to remain noncompliant with a lawful employment policy, notwithstanding several warnings of the foreseen consequences.  Accordingly, Plaintiff has not alleged sufficient facts to state a plausible claim of retaliation under the ADA.

## CONCLUSION

For the forgoing reasons, Defendant's motion to dismiss Plaintiff's Second Amended Complaint with prejudice is **GRANTED**. The Second Amended Complaint is **DISMISSED** in its entirety with prejudice.

Federal Rule of Civil Procedure 15(a) dictates that leave to amend a complaint shall be freely given "when justice so requires."  Although the Second Circuit has advised that "the usual practice upon granting a motion to dismiss [is] to allow leave to replead," *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991), Plaintiff has already been granted leave to amend her Complaint twice.  *See Ruotolo v. City of New*

*York*, 514 F.3d 184, 191 (2d Cir. 2008) ("leave to amend, though liberally granted, may properly be denied for . . . failure to cure deficiencies by amendments previously allowed") (internal citations omitted).  Here, Plaintiff filed her original Complaint, and First and Second Amended Complaints.  Moreover, Plaintiff "can plead no facts that would overcome the legal deficiencies discussed above." *Johnson v. Maximus Services LLC*, No. 22-cv-2935 (AMD), 2023 WL 5612826, at *6 (E.D.N.Y. Aug. 30, 2023).  As such, the Court will not grant further leave to amend.

The Clerk of Court is respectfully requested to enter judgment in favor of Defendant and to close this case. Defendant is requested to serve Plaintiff with a copy of this Memorandum and Order and the Judgment and to note service by April 2, 2024.


**SO ORDERED.**

Dated:      March 28, 2024
            Brooklyn, New York



                                    _____
                                    KIYO A. MATSUMOTO
                                    United States District Judge
                                    Eastern District of New York